## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VELEZ ENTERPRISES, LLC d/b/a OQSIE, | Civil no. 2:20-cv-05553-MMB |
| Plaintiffs, | |
| v. | |
| KVK-TECH, INC., MURTY VEPURI, and ANTHONY TABASSO, | |
| Defendants, | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT BY DEFENDANTS KVK-TECH, INC., MURTY VEPURI, AND ANTHONY TABASSO

KLEHR HARRISON HARVEY
BRANZBURG LLP

Dated: January 11, 2021

By: /s/ Monica Clarke Platt
    Francis M. Correll, Jr.
    Monica Clarke Platt
    1835 Market Street, 14th Floor
    Philadelphia, PA 19103
    Tel:  215-569-2700
    Fax:  215-568-6603
    fcorrell@klehr.com
    mplatt@klehr.com

    *Attorneys for Defendants KVK-Tech, Inc., Murty Vepuri, and Anthony Tabasso*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.    FACTS .....................................................................................................................2

III.    ARGUMENT ...........................................................................................................5

   A.   Legal Standards..............................................................................................6

     i.    Motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)...........6

     ii.    Motion to dismiss for failure to state a claim under Rule 12(b)(6) ............................7

   B.   The Court Lacks Subject Matter Jurisdiction Because Complete Diversity Does Not Exist Between the Parties..........................................................................7

   C.   The Court Should Dismiss Plaintiff's Breach of Contract and Unjust Enrichment Claims Against Vepuri and Tabasso..........................................10

   D.   Multiple Aspects of Plaintiff's Breach of Contract Claim Fail. ....................11

   E.   The Gist of the Action Doctrine Bars Plaintiff's Fraud Claim. .....................13

   F.   Plaintiff Has Failed to State a Claim for Fraud.............................................14

   G.   Plaintiff Has Failed to State a Claim for Tortious Interference. ....................16

   H.   The Court Should Dismiss or Strike Plaintiff's Claims for Attorneys' Fees.................17

IV.    CONCLUSION......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. State Farm Fire & Cas. Co.*,
No. CV 17-2606, 2017 WL 3484087 (E.D. Pa. Aug. 14, 2017)......................................17, 18

*Am. Guar. & Lia. Ins. Co. v. Fojanini*,
90 F. Supp. 2d 615 (E.D. Pa. 2000) ....................................................................................13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................................7

*Bernard v. Comcast Comprehensive Health & Welfare Benefits Plan*,
Civ. A. No. 1:09-cv-02097, 2010 WL 5060201 (M.D. Pa. Dec. 6, 2010)................................6

*Byers v. Intuit, Inc.*,
600 F.3d 286 (3d Cir. 2010)........................................................................................................7

*Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*,
460 F. Supp. 3d 560 (E.D. Pa. 2020) .......................................................................................18

*Coregis Ins. Co. v. Schuster*,
127 F. Supp. 2d 683 (E.D. Pa. 2001) ..........................................................................................6

*eToll, Inc. v. Elias/Savion Advertising, Inc.*,
811 A.2d 10 (Pa. Super. 2002)..............................................................................................13, 14

*Gentry v. Sikorsky Aircraft Corp.*,
383 F. Supp. 3d 442 (E.D. Pa. 2019) .......................................................................................7, 8

*GOLO, LLC v. HighYa, LLC*,
310 F. Supp. 3d 499 (E.D. Pa. 2018) ..........................................................................................7

*Grand Union Supermarkets of the Virgin Islands v. HE Lockhart Mgmt.*,
316 F.3d 408 (3d Cir. 2003)........................................................................................................8

*Hennessy v. Santiago*,
708 A.2d 1269 (Pa. Super. 1998)..............................................................................................16

*Hygienics Direct Co. v. Medline Indus., Inc.*,
No. Civ. A. 98-03883, 2000 WL 1468511 (E.D. Pa. Sept. 28, 2000) ...............................6, 8, 9

*J.F. Walker Co. v. Excalibur Oil Grp., Inc.*,
792 A.2d 1269 (Pa. Super. 2002)........................................................................................10, 11

ii

*KBZ Commc'ns Inc. v. CBE Techs., LLC*,
    634 F. App'x 908 (3d Cir. 2015) ........................................................................16

*Knop v. McMahan*,
    872 F.2d 1132 (3d Cir. 1989)...............................................................................8

*Kornea v. J.S.D Mgmt., Inc.*,
    366 F. Supp. 3d 660 (E.D. Pa. 2019) .................................................................15

*McCann v. Newman Irrevocable Tr.*,
    458 F.3d 281 (3d Cir. 2006)..................................................................................6

*Mifflinburg Telegraph, Inc. v. Criswell*,
    277 F. Supp. 3d 750 (M.D. Pa. 2017)................................................................16

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977)..................................................................................6

*Ojo v. Clarks Summit Hosp.*,
    LLC, 2017 WL 2692019 (M.D. Pa. June 22, 2017) .............................................9

*Packard v. Provident Nat'l Bank*,
    994 F.2d 1039 (3d Cir. 1993)................................................................................6

*Scott v. LTS Builders LLC*,
    No. 1:CV-10-0581, 2010 WL 4530153 (M.D. Pa. Nov. 2, 2010) .........................8

*Sherman v. State Farm Ins. Co.*,
    No. CV 17-4822, 2017 WL 5559911 (E.D. Pa. Nov. 17, 2017)..........................18

*Turicentro S.A. v. Am. Airlines, Inc.*,
    303 F.3d 293 (3d Cir. 2002).................................................................................7

**Other Authorities**

Fed. R. Civ. P. 9 .........................................................................................................16

Fed. R. Civ. P. 12(b)(1)................................................................................................6

Fed. R. Civ. P. 12(b)(6)................................................................................................7

Fed. R. Civ. P. 12(f)...................................................................................................17

Fed. R. Civ. P. 12(h)(3)................................................................................................6

Defendants KVK-Tech, Inc. ("KVK"), Murty Vepuri ("Vepuri"), and Anthony Tabasso ("Tabasso" and collectively, "Defendants") submit this memorandum of law in support of their motion to dismiss the complaint brought against them by Velez Enterprises, LLC ("Velez Enterprises") d/b/a OQSIE.

## I.     INTRODUCTION

In February 2020, KVK engaged Operations & Quality Systems Improvement Experts ("OQSIE") to assist with the evaluation and remediation of issues identified in a warning letter KVK had received from the Food and Drug Administration ("FDA"). The warning letter required KVK to investigate the issues raised and respond with the corrective measures it planned to take. The work originally planned was to take place through March of 2020 at a cost of approximately $240,000. Although KVK agreed to certain proposals by OQSIE, OQSIE performed work outside the agreed scope and consistently overbilled KVK.

Ultimately, dissatisfied with OQSIE's work and failure to adequately address the overbilling, KVK terminated the relationship with OQSIE and soon after initiated suit against its owners in the Pennsylvania Court of Common Pleas for Bucks County.[1] After Velez Enterprises was served with the writ of summons in the Bucks County action, it initiated this action, purportedly as OQSIE (although Plaintiff is only one of the company's three owners) against KVK, its CEO, Anthony Tabasso, and consultant Murty Vepuri, alleging breach of contract, unjust enrichment, fraud, and tortious interference. Despite the lack of complete diversity between the real parties in interest, Plaintiff brought this suit pursuant to the court's diversity jurisdiction asserting a host of allegations, nearly all of which fail as a matter of law. Thus, even if the Court

---

[1] That suit is captioned *KVK-Tech, Inc. v. Jose Velez, et al.*, no. 2020-04708 (C.P. Bucks Cnty.).

finds that it has jurisdiction over this action, the vast majority of Plaintiff's claims still must be dismissed.

## II.   FACTS

Invoking this Court's diversity jurisdiction, Plaintiff, Velez Enterprises, LLC, ("Velez Enterprises") d/b/a/ OQSIE filed this action against Defendants KVK, Vepuri, and Tabasso, alleging various claims revolving around the failed business relationship between KVK and OQSIE. Compl. ¶¶ 3, 5, 7. Defendants are all Pennsylvania citizens. Velez Enterprises is a Delaware LLC. However, Plaintiff failed to allege the citizenship of any of its members. OQSIE is a fictitious entity registered in Pennsylvania. *See* Pennsylvania Department of State business information, attached hereto as Exhibit 1. OQSIE has three owners: Velez Enterprises, Jose (Jaime) Velez ("Velez"), who is believed to reside in California, and William Schmidt ("Schmidt"), whom public records reflect is a citizen of Pennsylvania. *See id.* OQSIE's website holds Velez and Schmidt out as partners of the business. *See* OQSIE, Our Team, https://oqsie.com/our-team/, a PDF of which is attached hereto as Exhibit 2. Velez and Schmidt also hold themselves out as partners in OQSIE on their own LinkedIn profiles, attached hereto as Exhibits 3 and 4. Finally, OQSIE's LinkedIn page, a copy of which is attached hereto as Exhibit 5, describes it as a partnership.

OQSIE provides consulting services to companies in the life-sciences industry, including pharmaceutical manufacturers such as KVK. Compl. ¶¶ 2-4.[2] In February 2020, KVK received a warning letter from the United States Food and Drug Administration (the "Warning Letter"). *Id.* ¶ 13, Exhibit A. In response to the Warning Letter, on approximately February 13, 2020, KVK contacted Schmidt about working with OQSIE on remediation of the issues raised in the Warning

---

[2] In citing to Plaintiff's allegations in the Complaint, which must be accepted as true for the purposes of a motion to dismiss, Defendants do not intend to and do not admit any of the allegations.

Letter. *Id.* ¶ 17. Schmidt and Tabasso met the following day to discuss the project face to face. *Id.* ¶ 18. According to Plaintiff's allegations, Vepuri also attended this meeting and held himself out as a separate consultant. *Id.* ¶ 19. At the meeting, Tabasso, Vepuri, and Schmidt discussed the scope of KVK's potential engagement of OQSIE and determined that OQSIE would assist with a response to the Warning Letter and develop a remediation plan of corrective measures (the "Project"). *Id.* ¶ 20. Following the meeting between Tabasso and Schmidt, KVK engaged OQSIE to assist with responding to the Warning Letter, and OQSIE subsequently worked to develop protocols necessary for remediation and hired consultants and experts to assist with the Project. *Id.* ¶¶ 22, 24-25.

On March 9, 2020, Velez sent Tabasso a proposal for activities to take place over "the next four weeks or so" (i.e., until approximately mid-April 2020). *Id.* ¶ 29, Exhibit B. At the time, OQSIE recommended adding an additional nine consultants to the Project team, in addition to the three already working with KVK. *Id.* ¶ 22, Exhibit B. OQSIE provided the rates for additional consultants to KVK. *Id.* ¶ 30. Nothing in the proposal barred KVK from soliciting any of OQSIE's consultants to work with KVK. *Id.* at Exhibit B.

KVK approved the proposal and OQSIE consultants began to work on the Project. *Id.* ¶ 32. OQSIE and KVK held weekly meetings regarding the Project, at which time Vepuri led discussions on cost and performance on KVK's behalf. *Id.* ¶¶ 33-34. OQSIE billed KVK on a monthly basis, starting in February 2020 and KVK timely paid these invoices through May 2020. *Id.* ¶¶ 35, 41. At that time, KVK raised concerns about OQSIE's rates, and OQSIE advised KVK that it could obtain quotes from other consulting firms, which KVK did. *Id.* ¶¶ 41-43. KVK and OQSIE ultimately resolved the payment issue and through the middle of June 2020, KVK continued to timely remit payment of OQSIE's invoices. *Id.* ¶ 44.

In early June, OQSIE provided KVK with a report of its initial findings, which OQSIE alleges confirmed the issues raised in the Warning Letter and also identified other issues not raised by the Warning Letter. *Id.* ¶¶ 45-46. In OQSIE's telling, up to this time, KVK had no issues with OQSIE's performance and only after OQSIE issued its report did KVK's evaluation of the OQSIE consultants' performance become negative. *Id.* ¶¶ 36, 47. In fact, according to OQSIE, KVK was so pleased with their performance prior to this time that KVK requested that OQSIE assist in developing and delivering training to KVK staff that was outside the scope of the Warning Letter. *Id.* ¶ 37. Around the same time that OQSIE issued its report, KVK began withholding payment of OQSIE's invoices. *Id.* ¶ 48.

On or about June 5, 2020, Vepuri, Tabasso, and Velez had a phone call to discuss OQSIE's findings and KVK's criticisms of OQSIE's work. *Id.* ¶¶ 49-50, 52. According to Plaintiff, at this time, Vepuri referred to KVK as "his company." *Id.* ¶ 49. In June 2020, KVK requested that OQSIE share a proposal for remediation of "gaps in KVK's quality system set forth in the Report." *Id.* ¶ 53. On July 2, 2020, before receiving the proposal, KVK asked OQSIE's consultants to hold off on their work pending receipt of the proposal. *Id.* ¶ 56. OQSIE provided the proposal on July 6, 2020, estimating that the cost to complete the work within one year would be approximately ten-million dollars. *Id.* ¶ 54-55. After receiving the proposal, KVK requested that OQSIE's consultants continue to hold off on their work. *Id.* ¶¶ 57. Ultimately, KVK rejected OQSIE's proposal, and on July 16, 2020, terminated OQSIE's services. *Id.* ¶ 58. At the time that KVK terminated OQSIE's services, Plaintiff alleges, Tabasso committed to paying OQSIE's outstanding invoices (which Plaintiff alleges amounted to $2.2 million) and requested that several OQSIE consultants remain available to provide support to KVK. *Id.* ¶ 59-60, 71. OQSIE alleges that but for its termination, it would have earned $7,000,000 in additional profits. *Id.* ¶ 66.

At some point in early June, OQSIE consultant Edgardo Rivera ("Rivera") informed OQSIE that he had taken the position of Senior Director of Corporate Quality Control with KVK. *Id.* ¶¶ 22-23, 61-62. Although Plaintiff alleges that this was in violation of Rivera's contract (*id.* ¶ 23), Plaintiff did not cite any restrictive covenant in Rivera's contract, nor did Plaintiff allege that the contract was anything other than at-will. Plaintiff also does not cite any provision of any contract with KVK that prohibited the recruitment of OQSIE's consultants. Although Plaintiff alleges that KVK continues to try to recruit OQSIE consultants to work directly with KVK (*id.* ¶¶ 63-66, 68), Plaintiff does not allege any specifics such as who KVK attempted to recruit or what contract prohibited their recruitment, and does not allege that any such efforts were successful.

Plaintiff alleges that on August 8, 2020, Vepuri "personally made a settlement offer on behalf of KVK," but that this offer was insufficient to cover the outstanding invoices. *Id.* ¶¶ 72-73. As a result, Plaintiff brought this action asserting claims for breach of contract, unjust enrichment, fraud, and tortious interference with contract.

## III.  ARGUMENT

Plaintiff's complaint is deficient in many respects, primary among them that this Court lacks jurisdiction over this action. Further, Plaintiff has failed to allege any contract to which Tabasso or Vepuri were personally bound, failed to allege that Tabasso or Vepuri were personally enriched by OQSIE's services, failed to adequately plead fraud, and failed to allege facts supporting its claim of tortious interference. Further, Plaintiff's fraud claim is duplicative of Plaintiff's breach of contract claim and is therefore barred under Pennsylvania law. The Court should dismiss Plaintiff's complaint in its entirety due to lack of jurisdiction. However, even if the Court finds that it has jurisdiction, the Court still must dismiss the breach of contract and unjust

enrichment claims against Tabasso and Vepuri, and must dismiss the fraud and tortious interference claims in their entirety.

A.     **Legal Standards**

      i.     **Motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)**

Federal courts have limited jurisdiction and "are under a continuing duty to satisfy themselves of their jurisdiction" before hearing the merits of any case. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1049 (3d Cir. 1993). "If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added). Federal Rule of Civil Procedure 12(b)(1) allows defendants to move for such dismissal.  Fed. R. Civ. P. 12(b)(1).  In responding to a Rule 12(b)(1) motion, the plaintiff bears the burden to prove by a preponderance of the evidence that jurisdiction exists. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (holding that the party asserting jurisdiction bears the burden of proving citizenship); *Hygienics Direct Co. v. Medline Indus., Inc.*, No. Civ. A. 98-03883, 2000 WL 1468511, at *4 (E.D. Pa. Sept. 28, 2000).

Even where pleadings may facially satisfy jurisdictional prerequisites, when allegations relating to jurisdiction are untrue, the court must dismiss the action.  *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *Bernard v. Comcast Comprehensive Health & Welfare Benefits Plan*, Civ. A. No. 1:09-cv-02097,  2010 WL 5060201, at *2 (M.D. Pa. Dec. 6, 2010). In considering a 12(b)(1) motion challenging the allegations of the pleadings, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. Additionally, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*; *Coregis Ins. Co. v. Schuster*, 127 F.

Supp. 2d 683, 686 (E.D. Pa. 2001). Therefore, a court has discretion to allow affidavits, documents, and even limited evidentiary hearings to determine its jurisdiction. *See Turicentro S.A. v. Am. Airlines, Inc.,* 303 F.3d 293, 300 n.4 (3d Cir. 2002).

### ii.   Motion to dismiss for failure to state a claim under Rule 12(b)(6)

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010) (quoting *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 523 (3d Cir. 2009)). However, a court may not allow a complaint to stand that is nothing more than "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 503 (E.D. Pa. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B.   The Court Lacks Subject Matter Jurisdiction Because Complete Diversity Does Not Exist Between the Parties.

For the Court to have jurisdiction over this controversy, there must exist complete diversity between the parties. *Gentry v. Sikorsky Aircraft Corp.*, 383 F. Supp. 3d 442, 458 (E.D. Pa. 2019), app. dismissed at 2019 WL 6208143 (3d Cir. June 10, 2019). For jurisdictional purposes, "courts must assess the citizenship of real and substantial parties to the controversy,' and need not determine the citizenship of 'nominal or formal parties.'" *Id.* at 450 (quoting *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 358 (3d Cir. 2013). Citizenship is determined as of the time the

complaint was filed. *See Grand Union Supermarkets of the Virgin Islands v. HE Lockhart Mgmt.*, 316 F.3d 408, 410 (3d Cir. 2003).

Here, the real and substantial parties in interest include all of the owners of OQSIE, and there must exist diversity between Defendants and all three of OQSIE's owners. The use of a fictitious name "does not create a separate legal entity, but is merely descriptive of a person or corporation who does business under another name." *Gentry*, 383 F. Supp. 3d at 453-54 (quoting *Burlington Coat Factory of Pa., LLC v. Grace Constr. Mgmt. Co., LLC*, 126 A.3d 1010, 1024 (Pa. Super. 2015)). In short, the fictitious entity is not a legal entity separate from its owners. *Id.* Rather, the owners of a fictitious entity are the "real and substantial" parties in interest in the litigation. *Id.* at 458.

With respect to partnerships and limited liability companies, these "are not considered 'citizens' of a state as that term is used in the diversity statute." *Scott v. LTS Builders LLC*, No. 1:CV-10-0581, 2010 WL 4530153, at *2 (M.D. Pa. Nov. 2, 2010) (citing *Swiger*, 540 F.3d at 182; *Zambelli Fireworks Mfg. Co.*, 592 F.3d at 420); *see also Knop v. McMahan*, 872 F.2d 1132, 1137 n.11 (3d Cir. 1989). Instead, courts must look at the citizenship of each partner in the partnership or member of the LLC, and a plaintiff must allege the citizenship of each. *Scott*, 2010 WL 4530153, at *2. If any partner or member of plaintiff is a citizen of the same state as Defendant, there is no diversity jurisdiction. *Id.* If, at the time an action is instituted, a fictitious entity is owned by a partnership, courts must look at the citizenship of each partner, regardless of whether or not all partners are parties to the action. *See Hygienics Direct Co.*, 2000 WL 1468511, at *1-2 (plaintiff Hygienics Direct Company was a fictional entity created by a partnership between plaintiff Hygienics Telemarketing Inc., and a non-party, Interactive Marketing Group).

OQSIE is a fictious entity with three owners. Plaintiff, as well as Velez and Schmidt. As a fictional entity, OQSIE does not exist separate and apart from its owners. Accordingly, all three are parties in interest, despite the fact that Velez Enterprises is the only plaintiff. Further, according to both OQSIE's website, and the LinkedIn pages of Velez, Schmidt, and OQSIE, OQSIE is a partnership between Velez and Schmidt. *See* Exhibits 2-5. It matters not that only one of its owners is a plaintiff if OQSIE is actually a partnership. Rather, it is the citizenship of all the partners that weighs on diversity. Thus in *Hygienics Direct*, it was necessary for the court to assess whether a non-diverse partner who was not among the plaintiff group was still a partner at the time the suit was initiated or whether that partner had properly withdrawn from the partnership. *See Hygienics Direct Co.*, 2000 WL 1468511, at *7. As one of the partners (Schmidt) is, like Defendants, a citizen of Pennsylvania, there is not complete diversity between the parties in this action and the Court has no jurisdiction.

To get around this fatal defect, suit has been brought only by Velez Enterprises, but not the remainder of OQSIE's owners. Even this does not save Plaintiff's claims. Plaintiff has pleaded that it is an LLC, but notably has not pleaded the citizenship of each of its members, as required for diversity jurisdiction to lie. *Ojo v. Clarks Summit Hosp.*, LLC, 2017 WL 2692019, at *3 (M.D. Pa. June 22, 2017). This is not surprising, as Defendants believe that the LLC is likewise owned in part by Schmidt, a Pennsylvania citizen.  Because the real parties in interest here are not completely diverse, the Court lacks jurisdiction over Plaintiff's claims and must dismiss this action.

**C.    The Court Should Dismiss Plaintiff's Breach of Contract and Unjust Enrichment Claims Against Vepuri and Tabasso.**

Plaintiff's breach of contract and unjust enrichment claims against Vepuri and Tabasso, individually, fail for the simple fact that Vepuri and Tabasso were at all times acting on behalf of KVK, had no contract with OQSIE, and were not enriched by OQSIE.

Key to any breach of contract claim is the existence of an actual or implied contract between the plaintiff and defendant. *J.F. Walker Co. v. Excalibur Oil Grp., Inc.,* 792 A.2d 1269, 1272 (Pa. Super. 2002) (quotations omitted) ("Three elements are necessary to plead properly a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.").  There was never any contract between OQSIE and Vepuri or OQSIE and Tabasso for either defendant to breach. Tabasso is the CEO of KVK. Compl. ¶ 8. Vepuri is a consultant that at all times was acting on KVK's behalf. *Id.* ¶ 19. According to the Complaint, it was *KVK* that awarded OQSIE the project in February 2020. *Id.* ¶ 18. It was *KVK* that was billed by OQSIE for work. *Id.* ¶ 345. And it was *KVK* that withheld payment of OQSIE's invoices. *Id.* ¶¶ 41, 48. Finally, it was *KVK* that terminated the relationship with OQSIE in July of 2020. *Id.* ¶ 58. Unsurprisingly, then, Plaintiff alleges that "[d]uring all discussions between OQSIE and *KVK* regarding OQSIE's findings set forth in the report, Vepuri led the discussion *for KVK*," and that Vepuri made a settlement offer "on behalf of *KVK*." *Id.* ¶¶ 50, 72 (emphasis added).  Vepuri and Tabasso never had any contractual obligations to OQSIE, and the Complaint contains no allegations to the contrary. The Court must dismiss Plaintiff's breach of contract claim against the individual defendants.

Likewise, Plaintiff's unjust enrichment claim against Tabasso and Vepuri fails. To establish such a claim, there must be a "benefit conferred on the defendant by the plaintiff, appreciation of such benefit by the defendant, and acceptance and retention of such benefit under

circumstances that would create an inequity if defendant retained the benefit without payment." *J.F. Walker Co.*, 792 A.2d at 1273. There is no allegation that Vepuri or Tabasso were personally enriched in any way, a crucial element of any unjust enrichment claim. The work done by OQSIE and its consultants was done to benefit KVK, not Vepuri or Tabasso. In this scenario, there can be no claim for unjust enrichment against Tabasso and Vepuri personally, and the Court should dismiss the claim against them.

### D.   Multiple Aspects of Plaintiff's Breach of Contract Claim Fail.

As an initial matter, the Complaint is conspicuously devoid of any allegation of a written contract, and no such contract is attached.  Instead, the Complaint refers to a "Proposal" with a scope of work of $240,000. Compl. ¶ 82, Exhibit D. A review of the allegations in the Complaint, together with the allegedly unpaid invoices set forth in Plaintiff's Exhibit C, reveals that OQSIE does not claim that any invoices related to the Proposal are unpaid. *See also* Compl. ¶ 44. Thus, whatever contract the Plaintiff claims has been breached, it is not based on the Proposal. To the contrary, the allegations in the Complaint and the Proposal depict a typical services contract, where OQSIE provided services on an hourly basis and billed accordingly, and then a dispute arose as to the quality of the work and the amount of hours spent.

Plaintiff's breach of contract claim fails in many respects. Plaintiff alleges that KVK, Vepuri, and Tabasso breached their express and implied contracts with OQSIE by

1)  failing to pay for services rendered;

2)  acting in a way that interfered with the work of OQSIE consultants;

3)  terminating OQSIE's support without justification before the Project was complete; and

4)  improperly using OQSIE's work product, employing a[n] OQSIE consultant, and continuing to recruit OQSIE personnel after improperly terminating OQSIE's support.

Compl. ¶ 89. The only one of these assertions that Plaintiff has come close to adequately alleging is the failure to pay all of OQSIE's invoices.[3] Even reading the Complaint in the light most favorable to Plaintiff, there is no contract alleged relating to the other three items. In fact, those terms do not appear anywhere—not in the invoices, nor in the Proposal, nor in any other document identified by the Plaintiff. The Court must dismiss the claim to the extent that Plaintiff seeks to impose liability for anything other than nonpayment of the invoices. With respect to Plaintiff's claim that Defendants acted in any way that interfered with OQSIE's work, there is no factual allegation supporting this claim, nor is it a breach of any alleged agreement. As to the termination of OQSIE, the allegations of the Complaint make plain that the Project was to be completed in a phased approach, with OQSIE issuing a proposal at the beginning of each phase, which KVK was free to accept or reject. In February, KVK engaged OQSIE to craft a response to the Warning Letter and develop a response protocol. Compl. ¶¶ 18, 21, 24. On March 9, 2020, OQSIE provided a proposal for work that was expected to be completed over "the next four weeks or so." Compl. Ex. B. KVK accepted that proposal and OQSIE then performed work under that proposal. Compl. ¶¶ 29-32. However, in June of 2020, "KVK requested that OQSIE share a proposal to remediate the gaps in KVK's quality system as set forth in the Report" delivered by OQSIE in early June. Compl. ¶¶ 45, 53. Subsequent to that request, on July 2, 2020, shortly before OQSIE issued a new proposal, KVK requested that OQSIE pause its work pending receipt of the new proposal. Compl. ¶¶ 53-57. On July 6, 2020, while work was paused, OQSIE delivered the proposal. Compl. ¶ 54. KVK ultimately rejected that proposal and ceased work with OQSIE on July 16, 2020. *Id.* ¶ 58. Thus there was never any agreement to move forward with the Project beyond what was proposed in March of 2020, nor is there any allegation that there was ever any agreement that would require

---

[3] Again, Defendants deny any obligation relating to the payment of invoices. Nevertheless, Defendants recognize that this is an issue of fact, and not appropriate for determination on a motion to dismiss.

advanced notice of any termination. Therefore no contract was improperly terminated. Importantly, Plaintiff does not allege that the rejected proposal contained any language to suggest that it was a "package deal" that committed KVK to completing the full project as proposed.  To the contrary, the allegations in the Complaint and the proposal depict a typical services contract, where OQSIE provided services on an hourly basis and billed accordingly, with no commitment to a fixed minimum in either time or dollars.  KVK was free to terminate the relationship at any time, and the Complaint does not allege otherwise.

Finally, there is no allegation, and none of the proposals or correspondence attached to the Complaint reflect, that there was any agreement that OQSIE's work product would be its own, rather than KVK's or that KVK would not solicit or employ OQSIE's consultants. *See, e.g.,* Compl. Exhibits B, D. Accordingly, Plaintiff's fourth claimed breach also fails. The Court should dismiss Plaintiff's breach of contract claim to the extent that it relates to anything other than unpaid invoices for work performed.

### E.     The Gist of the Action Doctrine Bars Plaintiff's Fraud Claim.

Plaintiff's fraud claim fails for the simple fact that it has no life separate from the contract. The gist of the action doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *See eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). The doctrine thus bars tort claims arising solely from a contract, where duties allegedly breached were created and grounded in the contract, where liability stems from the contract, or where the tort claim essentially duplicates a breach of contract claim. *See id*. at 19.

The court must "determine[] from the complaint the essential nature of the claims alleged by distinguishing between contract and tort actions on the basis of source of the duties allegedly breached . . . ." *See Am. Guar. & Lia. Ins. Co. v. Fojanini*, 90 F. Supp. 2d 615, 622 (E.D. Pa. 2000). Tort actions can only arise out of duties imposed by law as a matter of social policy. *See eToll*,

811 A.2d at 14 (quoting *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. 1992). When a contract establishes the duty owed by a defendant, the action properly sounds in contract. *See id.* Where the complaint "essentially alleges a breach of duties that flow from an agreement between the parties, the action is contractual in nature . . . ." *Am. Guar.,* 90 F. Supp. 2d at 622. In order to construe a breach of contract in tort, the tort claim and the injury alleged must be the gist of the action, the contract being collateral. *See eToll*, 811 A.2d at 14. Further, where the purported "fraud" "concern[]s the performance of contractual duties," the "alleged fraud is generally held to be merely collateral to a contract claim for breach of these duties." *See id.* at 19.

The "essential nature" of Plaintiff's claim here is contractual, and the only duty alleged by Plaintiff arises out of the agreements alleged to exist between OQSIE and KVK, and the performance of the agreement. Plaintiff alleges that at the time KVK sought out OQSIE's services, Vepuri and Tabasso 1) knew KVK did not intend to use OQSIE's support for KVK's development and implementation of corrective measures, 2) that KVK would not comply with the hourly rates for OQSIE consultants, and 3) that Vepuri was not a consultant to KVK, but the de facto owner. Compl. ¶ 104. The first two of these plainly relate to KVK's performance of the contract (i.e., its agreement and alleged failure to perform by failing to use OQSIE for all phases of the project and failing to fully compensate OQSIE), and are barred by the gist of the action doctrine. The third (as discussed below) is in no way material and plaintiff has not even alleged that it in any way influenced OQSIE's decision to enter the relationship with KVK. Accordingly, Plaintiff's fraud claim is duplicative of its breach of contract claim and the Court should dismiss it.

**F.      Plaintiff Has Failed to State a Claim for Fraud.**

Plaintiff's fraud claim fails for the additional reason that plaintiff has not alleged any fraud. "Under Pennsylvania law, Plaintiff must allege (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it

is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Kornea v. J.S.D Mgmt., Inc.*, 366 F. Supp. 3d 660, 672 (E.D. Pa. 2019).

Plaintiff has not come close to alleging fraud because it does not allege that any material misrepresentations on which it relied exist. Plaintiff alleges that Defendants committed fraud by representing to OQSIE in February 2020 that KVK wished to engage OQSIE's services to assist with remediation of issues raised in the Warning Letter. Compl. ¶ 99. In fact, shortly after receiving the Warning Letter, KVK **did** engage OQSIE to assist with its response. *Id.* ¶ 18. Plaintiff alleges that Tabasso "represented that KVK and OQSIE would need to move quickly to provide an initial response to the Warning Letter." *Id.* ¶ 100. In fact, KVK received the Warning Letter on or about February 11, 2020, and was required to submit a response within 15 days. *Id.* ¶ 16. Thus KVK made no misrepresentation regarding its need to move quickly to respond. Plaintiff also alleges that "KVK, through Tabasso, represented that it desired that OQSIE move forward with deploying consultants to complete the work necessary following the initial response to the Warning Letter." *Id.* ¶ 102. This was not a misrepresentation, as reflected in the allegation that KVK did approve this work and paid for this work through June 2020. *Id.* ¶¶ 29-31, 35, 41, 44. The fact that KVK later balked when presented with OQSIE's subsequent remediation proposal and its massive ten-million dollar price tag does not serve to retroactively make Tabasso's earlier statements misrepresentations. Finally, Plaintiff alleges that Vepuri misrepresented his role as a consultant to KVK. *Id.* ¶ 101. Plaintiff does not, however, allege this representation was in any way material (or even relevant) to OQSIE's decision to work with KVK on the project, nor does Plaintiff allege any reliance on this representation. Because Plaintiff has not alleged a single material misrepresentation on which it relied, its fraud claim fails.

The Court should dismiss Plaintiff's fraud claim for the additional reason that Plaintiff has not met the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure. Under Rule 9, "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting the fraud." "To satisfy Rule 9, a plaintiff must 'plead the who, what, when, where and how: the first paragraph of any newspaper story.'" *KBZ Commc'ns Inc. v. CBE Techs., LLC*, 634 F. App'x 908, 913 n.7 (3d Cir. 2015) (quoting *Institutional Investors Grp. v. Araya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009)). Plaintiff's allegations are far too vague and conclusory to satisfy this standard, and its fraud claims should be dismissed accordingly.

### G.   Plaintiff Has Failed to State a Claim for Tortious Interference.

Plaintiff has not adequately pleaded the elements of its tortious interference claim, which are (i) the existence of contractual or prospective contractual relations between plaintiff and a third party; (ii) purposeful action on the part of defendants specifically intended to harm the existing relations, or to prevent the prospective relations from occurring; (iii) the absence of privilege or justification on the part of defendants; and (iv) harm to plaintiffs resulting from defendants' conduct. *Mifflinburg Telegraph, Inc. v. Criswell*, 277 F. Supp. 3d 750, 797 (M.D. Pa. 2017). Importantly, and as a fundamental matter, Plaintiff must show that Defendants' actions had more than "the incidental consequence of affecting plaintiff's business relationships with third persons." *Id*. Rather, Plaintiff must show that Defendants "acted for the malevolent purpose of interfering with the plaintiff's existing business relationships." *Id*. Finally, a party cannot be liable for tortious interference with an at-will contract. *Hennessy v. Santiago*, 708 A.2d 1269, 1278 (Pa. Super. 1998).

The failure by Plaintiff to adequately plead tortious interference is best elucidated by reviewing what Plaintiff does *not* allege. Plaintiff alleges that through KVK's hiring of consultant Rivera, Defendants interfered with Plaintiff's contractual relationship with him. But, Plaintiff does

not allege any particulars about Rivera's consulting relationship with OQSIE. The only allegation Plaintiff does make about Rivera's contract is that it related only to the KVK project, but not to a broader contractual relationship. Compl. ¶ 111. Plaintiff does not allege that Rivera's contract was anything other than at-will (and the fact that his contract was on a project-specific basis suggests that Rivera did not have an ongoing commitment to OQSIE), or that Rivera had any restrictive covenant preventing him from accepting a position with KVK. And, it is plain from review of the alleged agreement between OQSIE and KVK that there was nothing barring KVK from soliciting OQSIE's consultant. Further, Plaintiff has alleged no malicious intent on the part of KVK, and no intent other than the simple desire to hire an individual possessing the expertise it needed.[4] Compl. ¶ 113. This cannot support a claim of tortious interference.

Finally, Plaintiff does not allege any damages resulting from KVK's hiring of Rivera. Despite the claim that this somehow caused OQSIE $10 million in damages, Plaintiff does not support this in any way. Plaintiff does not allege any costs to replace Rivera and does not allege that it lost or did not win any consulting projects as a result of losing Rivera. Very simply, Plaintiff has failed to allege this key element of any tort, and its claim therefore fails.

### H.    The Court Should Dismiss or Strike Plaintiff's Claims for Attorneys' Fees.

Plaintiff's damages claims are also defective. There is no basis for the Court to award attorneys' fees, and the Court should dismiss or strike Plaintiff's requests for such an award.[5] In

---

[4] Despite asserting this claim against Tabasso individually, Plaintiff does not make a single allegation that Tabasso did anything to entice any of OQSIE's consultants to leave OQSIE and join KVK. Rather, Plaintiff only alleges that Vepuri enticed Rivera to join KVK and that Rivera later attempted (unsuccessfully) to recruit others to KVK. Compl. ¶¶ 62, 64. Thus, even if Plaintiff has stated a claim for tortious interference against KVK and Vepuri, the claim still fails as to Tabasso.

[5] Challenges to requests for attorneys' fees have been asserted under both Rule 12(b) and Rule 12(f). Regardless, the result is the same. "Rule 12(f) allows a court to 'strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter. . . .The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Aaron v. State Farm Fire & Cas. Co.*, No. CV 17-2606, 2017 WL 3484087, at *2 (E.D. Pa. Aug. 14, 2017) (citing *Simmons v. Simpson House, Inc.*, 224 F. Supp. 3d 406, 421 (E.D. Pa. 2016) (quotation and citation omitted)).

each of its counts, the damages Plaintiff seeks include attorneys' fees. "Under the 'American Rule,' parties are ordinarily responsible for their own attorneys' fees, regardless of the outcome." *See Aaron v. State Farm Fire & Cas. Co.*, No. CV 17-2606, 2017 WL 3484087, at *3 (E.D. Pa. Aug. 14, 2017) (citing *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126-27 (2015); *Merlino v. Delaware Cnty.*, 728 A.2d 949, 951 (Pa. 1999)). This rule applies unless "there is expressed statutory authorization, an agreement between the parties, or another established exception." *Sherman v. State Farm Ins. Co.*, No. CV 17-4822, 2017 WL 5559911, at *3 (E.D. Pa. Nov. 17, 2017). "Where a court can determine from the face of the complaint that a plaintiff cannot recover attorneys' fees, such a request may be stricken." *See Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560, 575 (E.D. Pa. 2020)*; Aaron*, 2017 WL 3484087, at *3 (striking claim for attorneys' fees where plaintiff did not point to any applicable exception to the American Rule); *Sherman*, 2017 WL 5559911, at *3-4 (dismissing claims for attorneys' fees "because the claim does not fall under any exceptions allowing attorneys' fees"). Here, Plaintiff has not pled and the exhibits attached to the Complaint do not reflect that there has been any fee-shifting agreement between the parties. Nor is there any statutory fee shifting available in this action for simple contract and tort claims. Because attorneys' fees are not available in this action, the Court should dismiss or strike Plaintiff's demands for such damages.

## IV.   CONCLUSION

There is no subject matter jurisdiction over this dispute in this Court and for that reason, the Court should dismiss Plaintiff's complaint in its entirety. However, even if the Court determines that it has jurisdiction, because Plaintiff's claims fail almost entirely, the Court should dismiss all but the narrow breach of contract and unjust enrichment claims against KVK only and only to the extent that they relate to unpaid invoices.

Respectfully submitted,

KLEHR HARRISON
HARVEY BRANZBURG LLP

Dated:  January 11, 2021                    By: /s/ Monica Clarke Platt
                                                   Francis M. Correll, Jr.
                                                   Monica Clarke Platt
                                                   1835 Market Street, 14th Floor
                                                   Philadelphia, PA  19103
                                                   Tel:  215-569-2700
                                                   Fax:  215-568-6603
                                                   fcorrell@klehr.com
                                                   mplatt@klehr.com

                                                   *Attorneys for Defendants KVK-Tech,*
                                                   *Inc., Murty Vepuri, and Anthony*
                                                   *Tabasso*

19